# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALBERTSON'S, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| vs. | )     NO. CIV-16-0276-HE |
| | ) |
| HFC, INC. OF SIDNEY IOWA, | ) |
| JAMES MARINHAGEN, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Plaintiff Albertson's, LLC filed this negligence action against HFC, Inc. of Sidney Iowa ("HFC") and one of its truck drivers, James Marinhagen, to recover for property damage. Plaintiff alleges that defendant Marinhagen, while parking an HFC tractor-trailer at plaintiff's Ponca City distribution facility, struck an outside fire hydrant. That, plaintiff asserts, over-pressurized its facility's fire-suppression system, causing an 8 inch interior pipe to rupture and its facility to flood, resulting in extensive water damage. Defendants have filed a motion for spoliation sanctions, claiming plaintiff repaired its equipment and failed to keep or destroyed key pieces of evidence. Although they request summary judgment or alternative sanctions, the alternatives defendants suggest – that the plaintiff be precluded from introducing any evidence of damages or causation -- have the same effect as summary judgment. Having considered the parties' evidence and arguments, the court concludes defendants' motion should be denied.[1]

---

[1] *In addition to asserting that summary judgment is warranted as a sanction for spoliation of evidence, defendants assert that plaintiff cannot establish causation. See Doc. #35, p. 2. Defendants fail, though, to develop this argument and the court considers it waived.*

Background

On December 23, 2014, around 4:45 a.m., defendant Marinhagen drove a tractor-trailer owned by defendant HFC onto the truck yard of plaintiff's distribution facility. While he was parking, plaintiff alleges Marinhagen negligently struck a fire hydrant. Plaintiff claims the damage to the hydrant created a leak "causing a loss of pressure in the entire fire suppression system-loop activating simultaneously both the water pump for the fire suppression system and the water pump to the external water supply resulting in hydraulic shock, which over-pressurized the system rupturing the 8" diameter pipe and flooding Albertson's facility." Doc. #38, pp. 1-2, ¶4.[2] Plaintiff alleges it incurred $333,042.06 in property damage, plus $5,266.66 in labor costs associated with the cleanup, maintenance and repair.

Plaintiff's maintenance manager, Theodore Bovard, investigated the incident immediately after it occurred. Among other things, he reviewed the facility's security video and examined the hydrant and the area where the 8 inch pipe and electric fire pump were located. He concluded, on either December 23 or 24, that the water damage was caused by a truck running into the fire hydrant. Danny Williams, plaintiff's operations manager, determined that it was defendants' truck which had hit the hydrant, based on his review of the security video. He telephoned Marinhagen on December 23, 2014, and told him that, after looking at the security footage, he thought Marinhagen had struck the

---

[2] Page references to briefs and exhibits are to the CM/ECF document and page number.

hydrant. Defendant Marinhagen responded that he "didn't believe [he] did." Doc. #38-8, p. 6.

On December 31, 2014, plaintiff had the 8 inch pipe repaired, but did not preserve it. Plaintiff also did not preserve the fire hydrant, which was repaired on January 9, 2015,[3] or the fittings, which were connected to the hydrant. Plaintiff further failed to keep the security video showing what happened on its back lot before 4:30 a.m. on the morning of the incident. Almost a year later, on December 3, 2015, defendants formally notified Albertson's that they were denying responsibility for the accident.

## Analysis

Defendants argue that plaintiff's failure to document (photograph) and retain key pieces of evidence -- the hydrant and fittings, the 8 inch pipe and the security video – "severely prejudices any investigator attempting to evaluate the losses, recreate the accident and determine possible causes." Doc. #35, p. 6. They contend that a spoliation sanction is proper because plaintiff had a duty to preserve the evidence and they are irrevocably prejudiced by its loss. Plaintiff responds that it did not have a duty to retain the evidence. It argues that it was "logical for Albertson's to assume litigation was *not* imminent and completely unnecessary" because its "internal investigation revealed there was only one clear cause of the accident." Doc. #38, p. 13. Plaintiff also asserts that

---

[3] *Plaintiff asserts that the repairs to the fire hydrant were completed on December 31, 2014, based on the Hajoca Purchase Order. The purchase order is dated January 22, 2015. See Doc. #38-17, p. 2. The dispute is immaterial for purposes of resolving defendants' motion.*

defendant's "feigned" inability to defend against plaintiff's claims does not demonstrate they have suffered any prejudice.

"A spoliation sanction is proper where: '(1) a party ha[d] a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" Jones v. Norton, 809 F.3d 564, 580 (10th Cir. 2015) (quoting Turner v. Pub. Serv. Co. of Colorado, 563 F.3d 1136, 1149 (10th Cir.2009)), *cert. denied*, 137 S.Ct. 197 (2016). Defendants have failed to demonstrate the first prong of the spoliation test. Here, unlike two of the cases defendants rely on, Mud Operations, Inc. v. SJL Well Serv., LLC, 2015 WL 11237651 (W.D. Okla. Sept. 25, 2015) and Brassfield v. State Farm Fire & Cas. Co., 2012 WL 12864942 (W.D. Okla. Dec. 13, 2012), the parties were not involved in a lawsuit at the time the evidence was discarded or destroyed. Defendants also have not shown that plaintiff knew or should have known at the time of the equipment and video were discarded, that litigation was "imminent."[4]

Plaintiff conducted an investigation immediately after the incident and concluded it was defendants' fault. Marinhagen, when contacted by Alberton's on the day the facility flooded, did not admit he hit the hydrant. However, he did not unequivocally deny it, instead responding that he "didn't believe" he had struck it. Doc. #39-4, p. 3. Defendants have not demonstrated that Albertson's had reason to believe on December 23 or in early

---

[4] *Imminent means "ready to take place," "near at hand," or "impending." Webster's Third New International Dictionary 1130 (2002).*

January when the repairs were done, that something other than defendants' truck hitting the hydrant caused the water damage.[5] And nothing in the record indicates plaintiff had any idea defendants were going to dispute liability until it received a letter from HFC's insurer almost a year after the incident stating that "there is no evidence that our insured struck the fire hydrant that led to the water damage" and advising plaintiff that it would be "unable to compensate [it] for any damages." Doc. #38-18, p. 2. That was long after the repairs had been made and the hydrant, fittings, pipe and video had been discarded. In these circumstances, it was reasonable for Albertson's to assume it would not have to sue to be indemnified for its loss.

The other cases defendants cite, Jordan F. Miller Corp. v. American Eagle Ins. Co., 1998 WL 68879 (10th Cir. 1998) and 103 Investors I, L.P. v. Square D Co., 470 F.3d 985 (10th Cir.2006), are distinguishable from what occurred here. In Jordan F. Miller Corp. the Tenth Circuit upheld the imposition of sanctions for spoliation against a plaintiff who failed to preserve landing gear which had allegedly failed, causing the plaintiff's newly purchased aircraft to crash. Not only did the plaintiff in that case concede it had a duty to preserve the landing gear and that the defendants had a right to examine it, the plaintiff knew the landing gear would be relevant if a lawsuit was filed, before the plane was repaired. The FAA had examined the plane shortly after the accident and concluded that

---

[5] *In his Opinion #2, defense expert Scott Futrell refers to the age of plaintiff's fire protection system and the "many pipe and fitting failures that were documented by the plaintiff." Doc. #35-9, p. 4. However, evidence of such is not in the record and there is no indication that at the end of 2014 plaintiff was aware of problems with its fire-suppression system.*

the "landing gear failed due to a fatigue crack." Jordan F. Miller Corp., 1998 WL 68879, at *1. In 103 Investors I, L.P. the plaintiff obviously knew that litigation was imminent, as it preserved a portion of the product that was allegedly defective, but not a piece that would have contained a warning, which was critical to the lawsuit in which the plaintiff alleged both defective manufacturing and failure to warn claims.

For these reasons, defendants have not shown that, at the time plaintiff had the hydrant and its fire protection system repaired in late December 2014/early January 2015, Albertson's had a duty to preserve the evidence which defendants now contend they must be able to visually examine in order to prepare for trial. Defendants also have not demonstrated the second prong of the spoliation test – the prejudice necessary to warrant the sanctions they seek.

For spoliation sanctions to be imposed, in addition to considering whether a duty to preserve the evidence existed, the court must also consider the effect of the unavailable evidence – did it prejudice the defendants' ability to defend against the plaintiff's claims to the extent a trial would be fundamentally unfair. *See* Jordan F. Miller Corp., 1998 WL 68879, at *6. Defendants assert they "cannot challenge or disprove Plaintiff's theory of the case without the physical evidence." Doc. 35, p. 25. However, as plaintiff points out, other evidence was available to defendants, including maintenance records, photographs, a truck gate log and witnesses who were present at the time of the incident.[6] *See e.g.,* Doc.

---

[6] *Defendants assert that there were "seven (7) other tractors and trailers present during the time at issue," other Albertson's vehicles in the vicinity, plus "others . . . seen walking around the area." Doc. #39, p. 4. The absence of security footage did not prevent defendants from*

Nos. 39, p. 5 (reference to maintenance records plaintiff produced), 39-6, 38-9, 38-7, 38-15. Despite his lack of access to the hydrant and pipe, defendants' expert, Scott Futrell, was able to come up with eight "alternate probable scenarios" which he states were "as possible as Mr. Bovards', but some are more probable." Doc. #38-6, p. 4. Unlike other cases in which spoliation sanctions have been imposed, this is not a situation in which "there was no substitute for a direct visual examination of the [destroyed evidence]." 103 Investors I, L.P., 470 F.3d at 989; *see* Jordan F. Miller Corp., 139 F.3d at *6 (defense experts' testimony would be "speculative at best" without "visual inspection and testing" of lost or destroyed evidence). According to Mr. Futrell, the effect of plaintiff's failure to retain the evidence is that "all experts [were prevented] from conclusively determining the cause of the water loss on December 23, 2014." Doc. #38-6, p. 2. In other words, both plaintiff and defendants were affected by the evidence that was not retained. And the effect was not to prevent their experts from reaching opinions, but only to keep them from reaching <u>conclusive</u> opinions.

Defendants have, at best, shown that plaintiff was negligent in failing to preserve the hydrant, fittings, pipe and security video. They have not demonstrated bad faith. *See* Jones, 809 F.3d at 580 ("Mere negligence in losing or destroying evidence is not enough to support imposition" of harsh sanctions of entry of default judgment or imposition of adverse inferences, which require a showing of bad faith) (internal quotation marks omitted). In the circumstances present here, considering plaintiff's level of culpability,

---

*interviewing or deposing the drivers of the other vehicles present or the persons walking about during the time in question.*

that litigation was not imminent or, based on what plaintiff knew at the time, probable, at the time plaintiff failed to retain what defendants claim is key evidence, and that other evidence existed which lessened the effect of defendants' lack of access to the equipment and security video, the court concludes a spoliation sanction is not warranted.[7]

Accordingly, defendants' motion for summary judgment or, in the alternative for spoliation sanctions, [Doc. #35] is denied.

**IT IS SO ORDERED**.

Dated this 18th day of September, 2017.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[7] *In its reply brief defendants raise a new argument – that plaintiff violated the National Fire Protection Association Standards ("NFPA") when it failed to preserve the evidence. The court will not consider the argument because plaintiff was not afforded the opportunity to address it. Even if considered, it would not alter the court's conclusion. Defendants cite no authority regarding what sanctions are authorized or appropriate for noncompliance with NFPA's preservation requirements.*